Julie A. STIFFLEAR, Plaintiff–Appellant,

v.

BRISTOL–MYERS SQUIBB COMPANY and Mead Johnson & Company, Defendants–Appellees.

No. 95CA0201.

Colorado Court of Appeals, Div. I.

May 2, 1996.

Rehearing Denied June 6, 1996.

Poulson, Odell & Peterson, LLC, Alan B. Cameron, Scott M. Campbell, Denver; Cohen, Milstein, Hausfeld & Toll, Daniel A. Small, Washington, DC, for Plaintiff–Appellant.

Holme, Roberts & Owen, LLC, Charles J. Kall, Bruce F. Black, Denver, for Defendants–Appellees.

Opinion by Justice QUINN.*

In this action under the Colorado Antitrust Act, plaintiff, Julie A. Stifflear, a class representative of indirect purchasers of infant formula in Colorado—*i.e.*, purchasers of infant formula from retailers—appeals the district court's dismissal of her complaint pursuant to C.R.C.P. 12(b)(5) for failing to state a claim for relief. We affirm the judgment of dismissal.

I.

The facts are undisputed. Plaintiff is a resident of Colorado and during the period from January 1, 1980, to December 31, 1992, purchased infant formula indirectly from one or both of the defendants, Bristol–Myers Squibb Company and Mead Johnson & Company. Defendants are pharmaceutical companies that manufacture and sell infant formula nationwide to wholesalers and distributors, which in turn sell the products to others in the chain of distribution.

Plaintiff brought this antitrust action on behalf of herself and others similarly situated. She alleged that between 1980 and 1992 defendants engaged in a continuing combination, conspiracy, and agreement to fix the wholesale prices of infant formula sold within the United States, that such conduct constituted a restraint of trade or commerce in violation of the Colorado Antitrust Act, and that she paid more for infant formula than she would have paid but for the defendants' illegal conduct. Plaintiff sought damages and injunctive relief against the defendants.

Defendants filed a motion to dismiss for failure to state a claim on the basis that indirect purchasers lacked standing under both the 1957 Colorado Antitrust Act (the 1957 Act) and the 1992 reenactment of the Act (the 1992 Act) that became effective on July 1, 1992. Defendants contended that indirect purchasers lacked standing to assert a judicially cognizable claim under the 1957 and 1992 Acts because the Colorado General Assembly intended that the standing requirements for private causes of action under those Acts be the same as the standing requirements for private causes of action under § 4 of the Clayton Act, 15 U.S.C. § 15 (1914).

The trial court dismissed the complaint with prejudice for lack of standing. The court determined that the General Assembly intended the 1957 Act to be construed in accordance with federal law and that, because the General Assembly carved out a limited standing exception only for governmental and public entities under the 1992 Act, the plaintiff lacked standing to bring an action against the defendants for acts committed prior to July 1, 1992. The trial court also determined that the so-called "void contract provisions" of the 1957 and 1992 Acts, which void any contracts made in violation of the Acts, did not provide an independent ground for indirect purchaser standing.

On this appeal, the plaintiff does not challenge the trial court's ruling that the "void contract provisions" do not accord standing to indirect purchasers and also concedes that

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. (1995 Cum.Supp.)

the 1992 Act precludes an indirect purchaser claim by a private indirect purchaser at retail. Plaintiff, however, does contend that federal antitrust law creates no impediment to an indirect purchaser claim under state law and that the 1957 Act does accord standing to the plaintiff and the class she represents to sue the defendants for antitrust violations. We reject this contention.

## II.

■■■ The question of standing is really an inquiry into whether the statutory provision "on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *State Board for Community Colleges v. Olson*, 687 P.2d 429, 434 (Colo.1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343, 355 (1975)). Resolution of the standing issue involves two considerations: (1) whether the party seeking judicial relief has alleged an actual injury from the challenged action; and (2) whether the injury is to a legally protected or cognizable interest. *O'Bryant v. Public Utilities Commission*, 778 P.2d 648 (Colo.1989); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d 1051 (Colo.1980).

■■■ Although the "actual injury" component of standing need not consist of a direct pecuniary loss, *O'Bryant v. Public Utilities Commission, supra,* there is no question here that the plaintiff has alleged a direct pecuniary loss by being required to pay more for infant formula than she would have paid but for the defendants' allegedly illegal conduct. The critical inquiry for purposes of the standing issue is whether the plaintiff's asserted injury is to an interest legally protected or cognizable under the 1957 Act. In answering that question, we must determine whether the Colorado Antitrust Act reflects a legislative purpose to confer on an indirect purchaser a right to judicial redress for alleged violations of the Act.

■■■ Section 6–4–101 of the 1957 Act contains the "illegal restraint of trade" proscription and states:

Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is declared illegal. Every combination, conspiracy, trust, pool, agreement, or contract intended to restrain or prevent competition in the supply or price of any article or commodity constituting a subject of trade or commerce in this state, or every combination, conspiracy, trust, pool, agreement, or contract which controls in any manner the price of any such article or commodity, fixes the price thereof, or limits or fixes the amount or quantity thereof to be manufactured, produced, or sold in this state, or monopolizes or attempts to monopolize any part of the trade or commerce in this state, is declared an illegal restraint of trade.

Colo. Sess. Laws 1957, ch. 142, § 55–4–1 at 369.

Section 6–4–102 of the 1957 Act prohibits any person, corporation, or association from entering into a contract, agreement, or conspiracy to engage in any conduct or restraint of trade declared unlawful under the Act, or to conspire or combine with any other person, corporation, or association to monopolize any part of the trade or commerce in the state. Colo. Sess. Laws 1957, ch. 142, § 55–4–2 at 369.

Section 6–4–108 of the 1957 Act renders the person, corporation, or association engaging in unlawful conduct liable "to any person transacting or doing business in this state for any damages he may sustain by reason of the doing of anything declared unlawful in this article." Colo. Sess. Laws 1957, ch. 142, § 55–4–8 at 371.

In 1992, the General Assembly repealed and reenacted the Antitrust Act and adopted the following standing provision in § 6–4–111(2), C.R.S. (1992 Repl.Vol. 2):

The attorney general may bring a civil action on behalf of any governmental or public entity, with the written consent of such entity, injured, *either directly or indirectly,* in its business or property by reason of any violation of this article and, if successful, shall recover any actual damages sustained by such entity. (emphasis added)

The 1992 Act also provides in § 6–4–111(3)(a), C.R.S. (1992 Repl.Vol. 2), that the

attorney general may bring a civil action as *parens patriae* on behalf of natural persons residing within the state who are injured in their business or property by reason of any violation of the Act and, if successful, shall recover any actual damages sustained by such natural persons. Section 6–4–111(3)(a), however, does not include the language "injured, either directly or indirectly" that was incorporated in § 6–4–111(2).

In 1992, the General Assembly also amended the damages provision previously contained in § 6–4–108 of the 1957 Act by providing in § 6–4–114(1), C.R.S. (1992 Repl.Vol. 2), as follows:

> Any person injured in its business or property by reason of any violation of this article may sue therefor and, if successful, shall recover any actual damages sustained by such person.

### III.

#### A.

Although the Colorado Supreme Court has not addressed the issue of an indirect purchaser's standing under the Colorado Antitrust Act, it has provided a conceptual framework for construing the act. In *People v. North Avenue Furniture & Appliance, Inc.*, 645 P.2d 1291 (Colo.1982), the supreme court considered the scope of the "labor exemption" of the 1957 Act and held that the exemption was not intended to immunize carpet installers from prosecution for price-fixing in violation of the act. In the course of its opinion, the supreme court noted that the Colorado Antitrust Act was modeled on Wisconsin's statute which, in turn, was based on relevant portions of the Sherman Act of 1890, 15 U.S.C. § 1 (1976), and the Clayton Act of 1914, 15 U.S.C. § 17 (1976). In light of the federal sources of the 1957 Act and the fact that Wisconsin judicial precedent had consistently construed the Wisconsin antitrust statute in accordance with federal case law, the supreme court in *People v. North Avenue Furniture & Appliance, Inc., supra,* 645 P.2d at 1295–96, held that the 1957 Act should be interpreted consistently with federal antitrust law:

Given the substantial similarity in text and purpose present in the federal and state antitrust statutes, we believe that federal decisions construing the Sherman and Clayton Acts, although not necessarily controlling on our interpretation of the Colorado law, are nevertheless entitled to careful scrutiny in determining the scope of the state antitrust statute.

Similarly, in *People v. Colorado Springs Board of Realtors,* 692 P.2d 1055 (Colo.1984), the supreme court reaffirmed the principle that federal judicial interpretations of the Sherman and Clayton Acts are entitled to careful scrutiny in determining whether a particular business arrangement is a *per se* antitrust violation under the Colorado Antitrust Act. *See also Dunlap v. Colorado Springs Cablevision, Inc.,* 829 P.2d 1286 (Colo.1992) (construing § 6–2–111(1) of Colorado Unfair Practices Act as consistent with § 4(a) of Clayton Act).

#### B.

Several federal decisions have addressed the question whether an indirect purchaser has standing to assert a claim for damages under § 4 of the Clayton Act. That section, which is similar to § 6–4–108 of the 1957 Act, provides that: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . ., without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 4 (1914).

In *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the United States Supreme Court addressed the issue of whether an indirect purchaser could establish standing under the Clayton Act by showing that the direct purchaser "passed on" the illegal overcharge to the indirect purchaser. The State of Illinois, suing on behalf of itself and various local governmental entities, alleged in a civil antitrust action that manufacturers and sellers of concrete block used in the construction of public buildings had engaged in a price-fixing conspiracy in violation of the Clayton Act. The Court held that only overcharged direct purchasers,

not others in the chain of manufacture or distribution, are entitled to recover damages under the federal act for a price-fixing violation.

In so ruling, the Court expressed concern that the long-standing policy of encouraging effective private enforcement of antitrust laws by concentrating full recovery for overcharging on direct purchaser claims would be thwarted by allowing indirect purchasers potentially affected by the overcharge to sue only for the amount the indirect purchaser could show was absorbed by such purchaser. *Illinois Brick Co. v. Illinois, supra,* 431 U.S. at 734, 97 S.Ct. at 2069, 52 L.Ed.2d at 718. The Court also emphasized that permitting an action by an indirect purchaser, in addition to creating a disincentive for effective private enforcement, would transform monopoly actions into massive multiparty law suits, with burdensome and complex issues of proof involving many levels of distribution and including large classes of ultimate consumers remote from the defendant. *Illinois Brick Co. v. Illinois, supra,* 431 U.S. at 740, 97 S.Ct. at 2071–72, 52 L.Ed.2d at 721. The Court thus concluded that "the legislative purpose in creating a group of 'private attorneys general' to enforce the antitrust laws ... is better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it." *Illinois Brick Co. v. Illinois, supra,* 431 U.S. at 746, 97 S.Ct. at 2075, 52 L.Ed.2d at 725.

The Supreme Court revisited the direct-purchaser rule in *California v. ARC America Corp.,* 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). The issue there was whether the direct-purchaser rule of *Illinois Brick* preempted state statutory provisions that expressly granted indirect purchasers a cause of action for damages flowing from violations of state antitrust statutes. Acknowledging that *Illinois Brick* did not address the preemptive force of the federal antitrust laws, the Supreme Court held that the congressional purposes of federal antitrust legislation, which provided the rationale for *Illinois Brick,* offered no support for holding that state indirect purchaser statutes are preempted by federal law. *California v. ARC America Corp., supra,* 490 U.S. at 103, 109 S.Ct. at 1666, 104 L.Ed.2d at 96.

Subsequent to its decision in *California v. ARC America Corp.,* the Supreme Court reaffirmed the direct-purchaser rule in *Kansas & Missouri v. Utilicorp United, Inc.,* 497 U.S. 199, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990), where the Court refused to carve out an exception to the rule for states suing as *parens patriae* on behalf of public utility consumers.

The United States District Court for Colorado has examined the relationship between § 6–4–108 of the 1957 Act and § 4 of the Clayton Act. In *Winther v. DEC International, Inc.,* 625 F.Supp. 100, 104 (D.Colo.1985), the court remarked that because "the purpose of the state and federal antitrust laws is identical, there is no reason to doubt that the two have similar standing requirements" and went on to hold that, because the plaintiff lacked standing under the federal antitrust law, the plaintiff lacked standing to assert a claim under the Colorado antitrust statute. *See also Smalley & Co. v. Emerson & Cuming, Inc.,* 808 F.Supp. 1503 (D.Colo.1992) (federal case law construing Sherman and Clayton Acts is entitled to careful scrutiny in resolving issues arising under Colorado's antitrust statute).

### IV.

In view of the similarity in text between the federal and Colorado antitrust statutes, we decline to depart from the basic analytical framework developed by federal courts with respect to the standing requirements for claims alleging state antitrust violations. The language of the 1957 Act does not mention indirect purchasers. Section 6–4–108 simply states that any person, corporation, or association shall "be liable to any person transacting or doing business in this state for any damages he may sustain by reason of the doing of anything declared unlawful in this article." Colo. Sess. Laws 1957, ch. 142, § 55–4–8 at 371. This language parallels the language of § 4 of the Clayton Act that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue

therefor." 15 U.S.C. § 15. The similarity of language in the Clayton Act and the 1957 Act, along with the federal precedent on the standing issue, leads us to conclude that indirect purchasers have no standing under the 1957 Act to assert a claim for money damages or injunctive relief for an antitrust violation.

Our conclusion finds support in the General Assembly's re-enactment of the Colorado Antitrust Act in 1992. Section 6–4–119 of the 1992 Act states that Colorado courts "shall use as a guide interpretations given by the federal court to comparable federal antitrust laws." This provision codified the views articulated by the Colorado Supreme Court in *People v. North Avenue Furniture & Appliance, Inc., supra,* and *People v. Colorado Springs Board of Realtors, supra.* That the General Assembly was aware of the direct-purchaser rule in re-enacting the Colorado Antitrust statute in 1992 is quite obvious from the legislative decision to repeal that rule only partially and to grant standing to governmental or public entities injured, either directly or indirectly, by reason of any violation of the Colorado Act. *See* § 6–4–111(2).

By enacting only a limited repeal of the direct-purchaser rule in 1992, the Colorado General Assembly declined to follow the lead of the Wisconsin legislature, which amended the Wisconsin antitrust statute upon which Colorado's 1957 Act was modeled. At the time the General Assembly enacted the 1957 Act, the Wisconsin statute, in language very similar to § 6–4–108 of the 1957 Colorado Act, stated that any person, corporation, or association shall be liable "to any person transacting or doing business in this state for ... threefold damages he may sustain by reason of the doing of anything forbidden by this section." Wis. Stat. Ann. § 133.01 (West 1939); *see John Mohr & Sons, Inc. v. Jahnke,* 55 Wis.2d 402, 198 N.W.2d 363 (1972). In 1987, subsequent to the Supreme Court's decision in *Illinois Brick,* Wisconsin amended its statute to permit "any person injured directly or indirectly, by reason of anything prohibited in this chapter," to sue. Wis. Stat. Ann. § 133.18 (West 1993). The Wisconsin amendment serves to confirm the fact that Wisconsin made a deliberate choice to abrogate the limitations on the direct-purchaser rule by expressly granting standing to all indirect purchasers. In contrast, the Colorado General Assembly, in the 1992 Act, elected to repeal the direct-purchaser rule only for suits brought by the attorney general on behalf of governmental or public entities.

V.

The same concerns that led the United States Supreme Court in *Illinois Brick* to reject standing for indirect purchasers are implicated here. Allowing indirect purchasers to sue for damages or injunctive relief under a pass-on theory of overcharge would dramatically hinder the long-standing policy of encouraging vigorous private enforcement of the antitrust laws by permitting direct purchasers to recover to the full extent of any overcharge paid by them.

Furthermore, there are difficulties in apportioning alleged overcharges. For example, plaintiff and the class she represents purchased infant formula only from retail stores, which most likely purchased the formula from wholesalers or intermediate distributors, which in turn purchased the product from defendants. To the extent that any alleged overcharge was passed on to the plaintiff and members of the plaintiff's class through the intermediate levels of distribution, plaintiff would be required to prove the retail price paid by the plaintiff for each specific item of formula and the amount of any overcharge subsumed in that price. The direct-purchaser rule enunciated in *Illinois Brick* was intended to avoid those burdensome and complex issues of proof, involving as they do many levels of distribution and large classes of ultimate consumers remote from any defendant.

We thus hold that indirect purchasers, such as the plaintiff, do not have standing under the 1957 Act to bring claims for money damages or injunctive relief based on alleged overcharges by manufacturers or wholesalers in violation of Colorado's antitrust statute. The trial court, therefore, properly granted the defendants' motion to dismiss the com-

plaint for failure to state a claim upon which relief can be granted.

The judgment is affirmed.

METZGER and RULAND, JJ., concur.