SUZANNE HYDE AND LYNN MEEKS, PLAINTIFFS-APPELLANTS v. ABBOTT LABORATORIES, INC., BRISTOL-MYERS SQUIBB CO., AND MEAD JOHNSON & CO., DEFENDANTS-APPELLEES

No. COA95-1147

(Filed 20 August 1996)

**Monopolies and Restraints of Trade § 27 (NCI4th)— indirect purchasers—standing to sue under state antitrust laws**

By enacting the 1969 revisions to N.C.G.S. § 75-16, the General Assembly clearly intended to expand the class of persons with standing to sue for a violation of North Carolina's antitrust laws, N.C.G.S. § 75-1 *et seq.*, to include any person who suffers an

injury under Chapter 75, regardless of whether that person purchased directly from the wrongdoer; therefore, the trial court erred in dismissing plaintiffs' claim alleging that defendants engaged in a conspiracy to fix the wholesale price of infant formula on the ground that plaintiffs, as indirect purchasers, lacked standing to bring this action under N.C.G.S. § 75-16.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 417-419.**

**Right of retail buyer of price-fixed product to sue manufacturer on federal antitrust claim. 55 ALR Fed. 919.**

Appeal by plaintiffs from order entered 27 July 1995 by Judge Janet Marlene Hyatt in Jackson County Superior Court. Heard in the Court of Appeals 23 May 1996.

*Hunter & Large, P.L.L.C., by Raymond D. Large, Jr. and Diane E. Sherrill, and Heins Mills & Olson, P.L.C., by Kent M. Williams for plaintiffs-appellants.*

*Smith Helms Mullis & Moore, L.L.P., by Larry B. Sitton, James G. Exum, Jr. and Richard A. Coughlin for defendants-appellees Bristol-Myers Squibb Company, and Mead Johnson & Company.*

*Peetree Stockton, L.L.P., by John T. Allred for defendant-appellant Abbott Laboratories, Inc.*

WYNN, Judge.

In November of 1994, plaintiffs Suzanne Hyde and Lynn Meeks filed a class action lawsuit on behalf of themselves and others similarly situated (hereinafter plaintiffs), seeking damages from defendants for alleged violations of North Carolina's antitrust laws—N.C. Gen. Stat. § 75-1 *et. seq.* (1994).

Plaintiffs alleged that between 1980 and 1992, defendants violated several of the antitrust laws of this state by "engaging in a continuing conspiracy to fix the wholesale price of infant formula sold within the United States, including North Carolina." Plaintiffs further alleged that the above illegal conspiracy caused an increase in wholesale prices paid by the parties who purchased the infant formula directly from the manufacturer (hereinafter direct purchasers) above that which the direct purchasers would have paid absent any conspiracy.

Plaintiffs, who are North Carolina residents, are indirect purchasers from the defendant manufacturers because they purchased infant formula through parties other than the manufacturer. Plaintiffs contended that they paid higher prices than they would have paid but for the alleged illegal conduct.

In February of 1995, defendants moved to dismiss plaintiffs' complaint under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1990), alleging that plaintiffs, as indirect purchasers, lacked standing to bring this action under N.C.G.S. § 75-16. In an amended order filed 27 July 1995, Superior Court Judge Janet Marlene Hyatt agreed, and granted defendants' motion to dismiss. From this order, plaintiffs appealed.

Prior to oral arguments before this Court, plaintiffs and defendant Abbott Laboratories entered into a tentative settlement agreement which must be approved by the superior court under N.C.R. Civ. P. Rule 23(c) (1996). As a result, plaintiffs and defendant Abbott Laboratories jointly moved for dismissal of the appeal against Abbott Laboratories. We granted that motion. Accordingly, this appeal proceeds against the remaining defendants, Bristol-Myers Squibb and Mead Johnson (hereinafter defendants).

---

As an initial matter, we note that the record on appeal does not clearly indicate whether the proposed record on appeal was served on 7 September 1995 or 11 October 1995. If service was accomplished on the later date, the proposed record was not timely served and the appeal is subject to dismissal. *Brooks v. Jones,* 121 N.C. App. 529, 530, 466 S.E.2d 344, 345 (1996); *Wilson v. Bellamy,* 105 N.C. App. 446, 457, 414 S.E.2d 347, 353, *disc. review denied,* 331 N.C. 558, 418 S.E.2d 668 (1992). The burden is on an appellant to establish that a record on appeal has been timely filed as required by the appellate rules. However, because there is a discrepancy in the record as to the date of service and given the great public importance of the issues in this case, we elect to treat the earlier date as the correct date of service. N.C.R. App. P. 2 (1996); *Wilson,* 105 N.C. App. at 457, 414 S.E.2d at 353.

On appeal, plaintiffs contend that the trial court erred by dismissing their complaint under N.C.R. Civ. P. 12(b)(6) on the grounds that indirect purchasers lack standing under N.C.G.S. § 75-16. We agree, and therefore reverse the order of the trial court.

A Rule 12(b)(6) motion to dismiss presents the question "whether, as a matter of law, the allegations of the complaint, . . . are

sufficient to state a claim upon which relief may be granted . . . ." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling on the motion to dismiss, the allegations of the complaint must be treated as true. *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). In ruling upon a Rule 12(b)(6) motion, the complaint is to be liberally construed, and should not be dismissed "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Davis v. Messer*, 119 N.C. App. 44, 51, 457 S.E.2d 902, 906-07, *disc. review denied*, 341 N.C. 647, 462 S.E.2d 508 (1995).

N.C.G.S. § 75-16 governs the determination of standing for redress of Chapter 75 violations. *Cf. La Notte, Inc. v. New Way Gourmet, Inc.*, 83 N.C. App. 480, 485, 350 S.E.2d 889, 892 (1986), *cert. denied and appeal dismissed*, 319 N.C. 459, 354 S.E.2d 888 (1987). That section provides:

75-16. Civil action by person injured; treble damages.

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

Section 75-16 is similar to section 4 of the federal Clayton Act. *Marshall v. Miller*, 302 N.C. 539, 542, 276 S.E.2d 397, 399 (1981).

Section 4 of the Clayton Act states:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15 (1991).

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 52 L. Ed. 2d 707, *reh'g denied*, 434 U.S. 881, 54 L. Ed. 2d 164 (1977), the United States Supreme Court held that indirect purchasers, such as plaintiffs in the

instant case, are not injured in their business within the meaning of section 4 of the Clayton Act, and thus, with certain exceptions, lack standing to pursue a claim under the federal antitrust laws. *Id.* at 728-29, 52 L. Ed. 2d at 714. The Court found this holding to be required by *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 20 L. Ed. 2d 1231 (1968).

*Illinois Brick* held that direct purchasers suffer the entire injury which follows from a violation of the federal antitrust laws, and are the only private parties allowed to sue for federal antitrust violations. *Illinois Brick*, 431 U.S. at 728-29, 52 L. Ed. 2d at 714. Consequently, the plaintiffs in the instant case could not pursue their claim under the federal antitrust laws unless they could demonstrate that their facts fit within an exception to *Illinois Brick*. Plaintiffs conceded this point at oral argument.

However, in *California v. Arc America Corp.*, 490 U.S. 93, 104 L. Ed. 2d 86 (1989), the United States Supreme Court held that a state may, consistent with the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, § 2, allow an indirect purchaser to sue under the state's own antitrust laws. *Id.* at 105-06, 104 L. Ed. 2d at .97. The issue in this case is whether N.C.G.S. § 75-16 allows such a suit by an indirect purchaser. We hold that it does.

In construing a statute, "our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished." *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). "Legislative purpose is first ascertained from the plain words of the statute." *Id.* "Our task is to determine whether the intent of the Legislature will be more fully served [if we construe this section in the manner argued by plaintiffs]." *Marshall*, 302 N.C. at 543, 276 S.E.2d at 400.

Plaintiffs contend that by enacting N.C.G.S. § 75-16 the legislature intended to grant standing to a consumer purchasing indirectly from a manufacturer or service provider to sue that manufacturer or service provider for a violation of Chapter 75, and that we should interpret this section to allow an indirect purchaser standing to sue for such violations.

Prior to a 1969 revision, N.C.G.S. § 75-16 began: "*If the business* of any person, firm or corporation shall be broken up, destroyed or injured . . . ." (emphasis supplied). In 1969, the General Assembly amended this section. The first sentence now begins:

**HYDE v. ABBOTT LABORATORIES**

[123 N.C. App. 572 (1996)]

> *If any person shall be injured or the business* of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing . . . in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action . . . .

(emphasis supplied). "Changes made by the legislature to statutory structure and language are indicative of a change in legislative intent and therefore provide some weight in our analysis." *Electric Supply Co.*, 328 N.C. at 656, 403 S.E.2d at 295.

In enacting the 1969 revisions, the General Assembly intended to "enable a person injured by deceptive acts or practices to recover treble damages from a wrongdoer." *Hardy v. Toler*, 24 N.C. App. 625, 630-31, 211 S.E.2d 809, 813, *modified on other grounds*, 288 N.C. 303, 218 S.E.2d 342 (1975); *see also Marshall*, 302 N.C. at 543, 276 S.E.2d at 400 (holding that by enacting N.C.G.S. § 75-16, "our Legislature intended to establish an effective private cause of action for aggrieved consumers in this State"); *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 95, 331 S.E.2d 677, 680 (1985) (stating that the purpose of N.C.G.S. § 75-16 was to "encourage private enforcement in the marketplace and to make the bringing of such a suit more economically feasible").

Defendants contend that by amending N.C.G.S. § 75-16, the General Assembly merely intended to change the law to allow standing to recover for non-business injuries. In short, defendants contend that in enacting the 1969 revisions, the legislature sought to widen the standing provision to allow standing for additional types of injuries, but not to additional classes of persons. Defendants further contend that although the amendment was intended to protect consumers, this intent does not indicate that the General Assembly intended to allow recovery by indirect purchasers.

Defendants are correct insofar as the 1969 revisions clearly granted standing to those suffering non-business injuries. However, defendants' contention that the General Assembly somehow intended to exclude a large class of persons—indirect purchasers—from recovery for non-business injuries is not persuasive. Instead, we hold that by enacting the 1969 revisions to N.C.G.S. § 75-16, the General Assembly clearly intended to expand the class of persons with standing to sue for a violation of Chapter 75 to include any person who suffers an injury under Chapter 75, regardless of whether that person purchased directly from the wrongdoer.

**HYDE v. ABBOTT LABORATORIES**

[123 N.C. App. 572 (1996)]

We find it significant that the General Assembly chose to amend N.C.G.S. § 75-16 by adding the phrase "if any person" to the beginning of the section. As it is currently written, N.C.G.S. § 75-16 provides standing to *any person* who suffers any injury, as well as for any business injury. By adding the above language, the General Assembly intended to provide a recovery for all consumers. *See Marshall*, 302 N.C. at 543-44, 276 S.E.2d at 400.

Defendants argue that consumers are not the same as indirect purchasers, since consumers sometimes purchase directly from the manufacturer or service provider. However, consumers often purchase goods from a wholesaler or retailer, and thus are often indirect purchasers. We find it unlikely that the legislature intended to "establish an effective private cause of action for aggrieved consumers in this State" *see Id.*, but intended to exclude from this remedy all indirect purchasers, many of whom are consumers.

In addition, defendants argue that we should interpret N.C.G.S. § 75-16 consistent with the United States Supreme Court's interpretation of section 4 of the Clayton Act in *Illinois Brick*. Federal case law interpretations of the federal antitrust laws are persuasive authority in construing our own antitrust statutes. *Madison Cablevision v. City of Morganton*, 325 N.C. 634, 656, 386 S.E.2d 200, 213 (1989); *Johnson v. Ins. Co.*, 300 N.C. 247, 262, 266 S.E.2d 610, 620 (1980); *N. C. Steel v. National Council on Compensation Ins.*, 123 N.C. App. 163, 472 S.E.2d 578 (1996).

The most recent substantive revision to N.C.G.S. § 75-16 took place in 1969. (The General Assembly revised this section slightly in 1977 by removing the words "by a jury." This revision did not alter the substance of this section). By contrast, *Illinois Brick* was not decided until 1977. It follows that our General Assembly could not have intended to adopt a judicial construction of N.C.G.S. § 75-16 which did not exist at the time of the revision. It is a familiar canon of statutory construction that when a legislature borrows from the statutes of another legislative body, the provisions of that legislation should be construed as they were in the other jurisdiction at the time of their adoption. *Shannon v. United States*, 512 U.S. ——, ——, 129 L. Ed. 2d 459, 467 (1994); *Carolene Products Co. v. United States*, 323 U.S. 18, 25-26, 89 L. Ed. 15, 21 (1944). Thus, in the subject case we consider as persuasive authority federal cases interpreting the federal antitrust laws as they existed in 1969.

**HYDE v. ABBOTT LABORATORIES**

[123 N.C. App. 572 (1996)]

The United States Supreme Court decided *Hanover Shoe* in 1968 and *Illinois Brick* in 1977. Since *Hanover Shoe* changed the manner in which direct purchasers were allowed to sue under the federal antitrust laws, and was later found by *Illinois Brick* to forbid an indirect purchaser from suing, we believe that federal cases between 1968 and 1977 are most instructive in discerning the state of federal antitrust laws when the General Assembly amended N.C.G.S. § 75-16 in 1969.

Prior to the United States Supreme Court's decision in *Illinois Brick,* most federal circuit courts construed section 4 of the Clayton Act to allow suits by indirect purchasers. *See e.g., In re Western Liquid Asphalt Cases,* 487 F.2d 191 (9th Cir. 1973), *cert. denied,* 415 U.S. 919, 39 L. Ed. 2d 474 (1974); *Illinois v. Bristol-Myers Co.,* 470 F.2d 1276 (D.C. Cir. 1972); *West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079 (2d Cir.), *cert. denied sub nom. Cotler Drugs, Inc., v. Chas. Pfizer & Co.,* 404 U.S. 871, 30 L. Ed. 2d 115 (1971); *Illinois v. Ampress Brick Co.,* 536 F.2d 1163 (7th Cir. 1976), *rev'd sub nom. Illinois Brick Co. v. Illinois,* 431 U.S. 720, 52 L. Ed. 2d 707, *reh'g denied,* 434 U.S. 881, 54 L. Ed. 2d 164 (1977); *but see Mangano v. American Radiator & Standard Sanitary Corp.,* 438 F.2d 1187 (3d Cir. 1971) *(per curiam).* We note further that the Fourth Circuit allowed an indirect purchaser to sue under section 4 of the Clayton Act in *South Carolina Council of Milk Producers, Inc. v. Newton,* 360 F.2d 414 (4th Cir.), *cert. denied,* 385 U.S. 934, 17 L. Ed. 2d 215 (1966). Although this decision occurred before the Supreme Court's decision in *Hanover Shoe,* it represents the Fourth Circuit's most recent pronouncement on this issue prior to the amendments to N.C.G.S. § 75-16 in 1969.

Based on the foregoing, we conclude that the great weight of federal case law authority in 1969 held that indirect purchasers were allowed standing under section 4 of the Clayton Act. Thus, insofar as we consider federal precedent as persuasive authority regarding construction of N.C.G.S. § 75-16, we find that the relevant federal precedent counsels us to allow plaintiffs standing under N.C.G.S. § 75-16.

Defendants cite *Stifflear v. Bristol-Myers Squibb Co.,* No. 95 CA0201, 1996 WL 219232 (Colo. Ct. App. 1996), and *Abbott Laboratories, Inc. v. Segura,* 907 S.W.2d 503 (Tex. 1995) in support of their argument that indirect purchasers lack standing to sue under state antitrust laws patterned after section 4 of the Clayton Act. These cases, however, are distinguishable.

In *Stifflear,* the Colorado Court of Appeals held that indirect purchasers do not have standing to sue under the Colorado antitrust laws. *Id.* at \*7. *Stifflear* is distinguishable from the instant case for two principal reasons.

First, Colorado's antitrust laws were modeled on Wisconsin's antitrust statute, which was itself modeled on the federal Sherman and Clayton Antitrust Acts. *Id.* at \*3. Because the Colorado statute was patterned on the Wisconsin provision, the *Stifflear* Court stated:

> Given the substantial similarity in text and purpose present in the federal and state antitrust statutes, we believe that federal decisions construing the Sherman and Clayton Acts, although not necessarily controlling on our interpretation of the Colorado law, are nevertheless entitled to careful scrutiny in determining the scope of the state antitrust statute.

*Id.* (quoting *People v. North Avenue Furniture & Appliance, Inc.,* 645 P.2d 1291, 1295-96 (Colo. 1982)). By contrast, our Supreme Court has stated only that federal cases are persuasive authority in construing our antitrust statutes. *Madison Cablevision,* 325 N.C. at 656, 386 S.E.2d at 213.

Second, Colorado substantially revised its antitrust laws in 1992. *Stifflear,* 1996 WL 219232 at \*3. The revised Colorado antitrust law provides that: "The attorney general may bring a civil action on behalf of any governmental or public entity . . . injured, *either directly or indirectly,* in its business or property by reason of any violation of this article . . . ." Colo. Rev. Stat. § 6-4-111(2) (1992) (emphasis supplied). Section 6-4-111(3)(a) of the Colorado statutes provides: "The attorney general may bring a civil action as *parens patriae* on behalf of natural persons residing within the state who are injured in their business or property . . . ." Notably, this section does not include the language "injured, either directly or indirectly" which is found in § 6-4-111(2). The *Stifflear* Court found the absence of the phrase "either directly or indirectly" in § 6-4-111(3)(a) significant because the difference in statutory language indicated that the Colorado General Assembly considered whether to allow indirect purchasers to sue, and determined that the only indirect purchaser allowed to bring suit is a governmental agency. By contrast, our General Assembly has not substantively revised N.C.G.S. § 75-16 since the United States Supreme Court decision in *Illinois Brick.*

## HYDE v. ABBOTT LABORATORIES

[123 N.C. App. 572 (1996)]

Since we consider federal case law only as persuasive authority, rather than giving it "careful scrutiny," and because our General Assembly has not substantively revised N.C.G.S. § 75-16 since *Illinois Brick* was decided, we find *Stifflear* unpersuasive for this case.

*Segura* is also distinguishable from the instant case. In *Segura*, the Texas Attorney General sued the defendants seeking damages under the state antitrust act as *parens patriae* on behalf of consumers who purchased infant formula indirectly from the defendants. The Attorney General alleged that defendants engaged in price fixing and other activities which were illegal under Texas' antitrust laws. *Segura*, 907 S.W.2d at 504. Private plaintiffs, representing a class of consumers who purchased infant formula indirectly from the defendants, intervened and sought damages for the same conduct for which the State of Texas sought damages. The private plaintiffs, however, alleged that defendants' conduct violated Texas' Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (1987). The private plaintiffs conceded that their claim would be barred under Texas' antitrust laws, because the Texas Legislature mandates that Texas antitrust laws be harmonized with federal antitrust laws. *Segura*, 907 S.W.2d at 504-05. The Texas Supreme Court held that since the private plaintiffs' claims would be barred under Texas antitrust laws, the claims must be barred under Texas' Deceptive Trade Practices Act as well, in order to prevent an "end run" around the policies allowing only direct purchasers to recover under Texas' antitrust laws. *Id.* at 505-06. Unlike the Texas Legislature, our General Assembly has not mandated that our antitrust laws be construed in harmony with federal antitrust laws.

Plaintiffs cite *Blake v. Abbott Laboratories, Inc.*, No. 03A01-9509-CV-00307, 1996 WL 134947 (Tenn. Ct. App. 1996) to support their argument that indirect purchasers have standing to sue under state antitrust statutes. The standing provision of the Tennessee statute provides: "Any person who is injured or damaged by any . . . arrangement, contract, agreement, trust, or combination described in this part may sue for and recover . . . from any person operating such trust or combination, the full consideration or sum paid . . . ." Tenn. Code Ann. § 47-25-106. The *Blake* Court held that this section grants standing to any person or persons injured under Tennessee antitrust laws "whether the individual is a direct purchaser or indirect purchaser." *Blake*, 1996 WL at *3. *Blake* held that Tennessee antitrust laws are not identical to federal antitrust laws, and the *Illinois Brick* limitation did not apply in Tennessee. *Id.* at *3-4.

Since we are not required to construe our antitrust statute in harmony with the federal antitrust laws, we likewise find that the *Illinois Brick* limitation does not apply in North Carolina.

Defendants further contend that the General Assembly's failure to explicitly amend N.C.G.S. § 75-16 to allow an indirect purchaser standing to sue for violations of our antitrust laws demonstrates that the General Assembly accepted the *Illinois Brick* rule. We disagree. In *Styers v. Phillips*, 277 N.C. 460, 472, 178 S.E.2d 583, 590-91 (1971), our Supreme Court stated:

> [T]he rule is that ordinarily the intent of the legislature is indicated by its actions, and not by its failure to act . . . .
>
> In *James v. Young*, 77 N.D. 451, 43 N.W.2d 692, it was held that the legislature's failure to pass a bill "cannot be said to indicate any intent on the part of the legislature. A public policy is declared by the action of the legislature, not by its failure to act . . . ." In *Moore v. Board of Freeholders of Mercer County*, 76 N.J. Super. 396, 184 A.2d 748, the defendants argued that the failure of the legislature to pass a bill specifically authorizing a citizen to photocopy public records indicated a denial of the right. The court said, "[W]e decline to attribute any such attitude to the legislature. Defendant's conclusion can be nothing more than conjecture. Many other reasons for legislative inaction readily suggest themselves."

*Id.* See also *Blake*, 1996 WL at *3 (holding that the failure to enact legislation is not at all indicative of legislative intent).

The rule in North Carolina is clear that the intent of the General Assembly may only be discerned by its actions, and not its failure to act. As a result, the failure of the General Assembly to amend N.C.G.S. § 75-16 to allow an indirect purchaser to sue is of no consequence to the case *sub judice.*

We note further that the concerns which underlie the United States Supreme Court decision in *Illinois Brick* are less worrisome in the instant case. *Illinois Brick* set out several reasons why federal antitrust laws disallowed suits by indirect purchasers.

First, the *Illinois Brick* Court was concerned with the possibility of multiple liability. *Illinois Brick*, 431 U.S. at 730, 52 L. Ed. 2d at 715. The Court expressed belief that both a direct and an indirect purchaser would recover the full amount of the overcharge, thus sub-

**HYDE v. ABBOTT LABORATORIES**

[123 N.C. App. 572 (1996)]

jecting a defendant to liability greater than three times the amount of its antitrust violation. *Id.* However, there are few, if any, reported instances of a defendant paying treble damages to two different classes of purchasers based on a single antitrust violation. Thomas Greene, *Should Congress Preempt State Indirect Purchaser Laws? Counterpoint: State Indirect Purchaser Remedies Should be Preserved,* 5 WTR Antitrust 25, 26-27 (1990).

In addition, the United States Supreme Court in *Arc America* stated that *Illinois Brick* was concerned solely with the construction of federal antitrust laws, and not at all with state court constructions of state antitrust laws. *Arc America,* 490 U.S. at 102-03, 104 L. Ed. 2d at 95-96. The *Arc America* Court further stated, "[N]othing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws." *Id.* at 103, 104 L. Ed. 2d at 96. Regarding the possibility of state law remedies resulting in multiple liability for antitrust defendants, *Arc America* held that there is no federal policy against states imposing liability in addition to that imposed by federal law. *Id.* at 105, 104 L. Ed. 2d at 97. In short, our appellate courts are free to interpret North Carolina antitrust laws in a manner we believe to be most consistent with the purposes behind our antitrust laws. We find that a slight risk of multiple liability is greatly outweighed by the benefit of advancing the aforementioned policies of N.C.G.S. § 75-16.

Second, the *Illinois Brick* Court was concerned that "requiring direct and indirect purchasers to apportion the recovery [in a proceeding under section 4 of the Clayton Act] would result in no one plaintiff having a sufficient incentive to sue under that statute." *Arc America,* 490 U.S. at 104, 104 L. Ed. 2d at 96-97. However, "State indirect purchaser statutes pose no similar risk to the enforcement of the federal law." *Id.* at 104, 104 L. Ed. 2d at 97. This is true because a defendant guilty of an antitrust violation would face paying damages to indirect purchasers under state antitrust laws as well as paying any damages awarded to direct purchasers under federal antitrust laws. As a result, both direct and indirect purchasers would have a sufficient incentive to sue for violations of Chapter 75 under our construction of N.C.G.S. § 75-16.

Finally, the *Illinois Brick* Court was concerned that allowing a suit by indirect purchasers would lead to highly complex litigation, due to the necessity of determining the proportion of the overcharge

which was passed on to indirect purchasers. *Illinois Brick*, 431 U.S. at 732, 52 L. Ed. 2d at 716-17. As plaintiffs conceded at oral argument, this concern is valid. It is clear that a suit by indirect purchasers under our antitrust laws will be complex. However, when asked at oral argument whether "chaos reigned" in states which have allowed indirect purchaser suits, defendants were unable to cite a single example. This failure to cite a single indirect purchaser case in which a court has been faced with an impossibly complex suit counsels us that a fear of complexity is not a sufficient reason to disallow a suit by an indirect purchaser, given the intent of the General Assembly to "establish an effective private cause of action for aggrieved consumers in this State." *Marshall*, 302 N.C. at 543, 276 S.E.2d at 400.

The United States Supreme Court has stated that its interpretation of section 4 of the Clayton Act must "promote the vigorous enforcement of the antitrust laws." *Kansas v. Utilicorp United Inc.*, 497 U.S. 199, 214, 111 L. Ed. 2d 169, 184 (1990). The *Utilicorp* Court implied that it would have allowed indirect purchaser suits in the case before it if the Court was convinced that indirect purchaser suits would better promote the goals of the antitrust laws. *Id.*

We believe that allowing indirect purchasers to sue for Chapter 75 violations will best advance the legislative intent that such violations be deterred, and that aggrieved consumers have a private cause of action to redress Chapter 75 violations. Accordingly, we hold that indirect purchasers have standing under N.C.G.S. § 75-16 to sue for Chapter 75 violations.

For the foregoing reasons, the decision of the trial court is reversed, and this case is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges EAGLES and SMITH concur.